```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
   CORI AMBROSE,                                                  :
                                  Plaintiff,                      :    **MEMORANDUM DECISION**
                                                                  :    **AND ORDER**
                          - against -                             :
                                                                  :    19-cv-3522 (BMC)
   COMMISSIONER OF SOCIAL SECURITY,                               :
                                                                  :
                                  Defendant.                      :
                                                                  :
----------------------------------------------------------------- X
```

**COGAN, District Judge.**

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she does not qualify for disability insurance benefits because she is not "disabled" under the Social Security Act. The ALJ found that plaintiff has severe impairments of laryngomalacia, dysphonia, and dysphagia. These are structural anomalies in the throat that result in hoarseness, a weak voice, occasional choking, and shortness of breath if plaintiff speaks for long periods. Indeed, as a child, plaintiff had over 22 surgeries to repair her throat anomalies, including at least one tracheotomy. These impairments led to her receiving disability benefits under Title XVI during childhood, but those benefits ceased in 2006. This proceeding arose when plaintiff reapplied for benefits after she turned 18.

Notwithstanding plaintiff's impairments, the ALJ found that plaintiff had sufficient residual functional capacity to perform "less than the full range of light work." The ALJ specified the following limitations: no climbing scaffolds, no unprotected heights, no hazardous machinery, no extreme temperatures, no vigorous activities on a

sustained basis, and no speaking throughout the day, such as using a phone "all day." A vocational expert testified at the hearing that, with those limitations, plaintiff could perform the work of a mail sorter, price marker, and office helper, all of which are classified as "light" work.

Plaintiff challenges this conclusion on three grounds. First, she asserts that the ALJ failed to develop the administrative record by rejecting a request for an additional extension to submit medical records and by failing to seek medical source statements from her treating physicians. Second, plaintiff contends that the Appeals Council improperly rejected new evidence without explanation. Third, and relatedly, plaintiff contends that if the Appeals Council had properly addressed this new evidence, the treating physician rule would have required it to reverse the ALJ's decision or to remand for an additional hearing. I will address each of these points seriatim.

I.  **The ALJ's Development of the Record**

At the conclusion of the hearing on May 22, 2018, the ALJ offered plaintiff's counsel two weeks to submit additional medical records from New York University Medical Center.[1] On June 5, 2018, plaintiff's counsel requested an additional three weeks. The ALJ denied that request in his decision on June 25, 2018. Thus, plaintiff suggests that the ALJ abused his discretion in not granting the second request for a three-week extension to submit the NYU records.

I cannot find an abuse of discretion. First, as the ALJ noted, the applicable regulations required plaintiff's attorney to submit all records five days prior to the

---

[1] I do not see such an offer in the hearing transcript, but a June 5, 2018 letter from plaintiff's counsel confirms it, as does the ALJ's decision. Since neither party has disputed that plaintiff received this additional time to submit the NYU records, I will assume that to be the case.

2

hearing, absent regulatory exceptions which plaintiff's counsel did not and does not invoke and which do not appear to apply here.  See 20 C.F.R. § 416.1435(a), (b).

Second, plaintiff's counsel was aware of these records before the hearing.  Two weeks beforehand, plaintiff's counsel wrote to the Office of Disability Adjudication & Review, noting: "We have requested updated medical evidence from NYU Langone and Boston Children's Hospital.  We are informed that the above requests are being processed at this time.  We will submit these records upon receipt."  Plaintiff's counsel had been appointed on October 17, 2017, and he offered no reason why he did not attempt to obtain these records earlier.

Third, counsel's request for an additional three weeks offered no indication that three weeks would be adequate.  There was no information about any conversations or correspondence that plaintiff's counsel had with NYU Medical Center suggesting that the records would be produced in three weeks.  Thus, the ALJ faced a situation in which the additional three weeks might as well have been open-ended, as the ALJ had no reason to believe that the records would be produced in that period.

Fourth, the ALJ's exercise of discretion to deny the request was not summary.  The ALJ explained that plaintiff's counsel had submitted voluminous records at the hearing, that the regulation required counsel to submit any additional records five days before the hearing, that the ALJ had granted plaintiff's counsel an additional two weeks, and that "ample opportunity was already given" and "no additional basis was provided to overcome the 5-day rule."

Finally, it turned out that three weeks would not have been adequate anyway.  By the time the ALJ rendered his decision, the three weeks had effectively passed from the

3

date of counsel's request, and counsel still had not submitted the records. In fact, it does not appear that these additional records were submitted to the Appeals Council until late September 2018.[2]

Relatedly, plaintiff argues that the ALJ should have *sua sponte* requested and obtained medical source statements – *i.e.*, opinions as to plaintiff's residual functional capacity – from her treating physicians. She cites no authority for the proposition that an ALJ's obligation to develop the record includes an obligation to solicit medical opinions from treating physicians, especially when, as here, counsel makes no such request to the ALJ. The better-reasoned cases consider the existing record complete, and do not require additional opinions from treating physicians, when the existing record, including the opinions of non-treating physicians, supports the ALJ's conclusion of non-disability. See Burchette v. Comm'r of Soc. Sec., No. 19-cv-5402, 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020) (citing Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013)); Hill Ogletree v. Saul, No. 19-cv-7208, 2020 WL 3171354, at *11–12 (S.D.N.Y. June 15, 2020); Peterson v. Berryhill, No. 17-cv-6397, 2018 WL 4232896, at *4 (W.D.N.Y. Sept. 5, 2018); but see Antonetti v. Comm'r of Soc. Sec., No. 19-cv-1396, 2020 WL 3893010, at *5 (E.D.N.Y. July 11, 2020) (where the underlying treatment records are not part of the administrative record, the ALJ has an obligation to contact the treating physician, obtain the underlying treatment records, and solicit a medical opinion from the treating physician). Although it is not uncommon for plaintiff's counsel to send medical source

---

[2] There is no cover letter to confirm the date that plaintiff's counsel finally submitted the additional evidence to the Appeals Council. However, as the Appeals Council noted, many of these records pertained to treatment subsequent to the hearing, and thus were not included in counsel's request to the ALJ for an additional three weeks. Even the additional records that pre-date the hearing bear "printed by" dates showing that counsel did not get these records until September 2018.

4

questionnaire forms to treating physicians and to persuade them to complete the forms, and the ALJ has the power to subpoena existing medical records, the ALJ has no power to compel plaintiff's treating physicians to work without pay to draft expert opinions or complete questionnaires.[3]

The ALJ therefore did all that he was required to do to develop the record.

**II.     The Appeals Council's Rejection of New Evidence**

The additional medical records that plaintiff finally submitted to the Appeals Council fell into one of two groups. The first group covered the period before the ALJ's decision, from December 14, 2016 through May 14, 2018 (the "early period"). The second group comprised the treatment records that post-dated the ALJ's decision, covering June 27, 2018 to October 9, 2018 (the "later period"). As to the records from the early period, the Appeals Council held that "this evidence does not show a reasonable probability that it would change the outcome of the decision." As to the records from the later period, the Appeals Council held that "[t]his additional evidence does not relate to the period at issue," which was from the alleged onset date of November 5, 1997 to the ALJ's decision on June 25, 2018.

For the early period records, it is ironic that plaintiff accuses the Appeals Council of "simply" and "only" stating that the early period records would not assist her, and that

---

[3] There are several decisions out of the Eastern District of New York suggesting a broader obligation to obtain treating physician opinions. See, e.g., Tirrell v. Berryhill, No. 15-cv-518, 2018 WL 2048879, at *17 (E.D.N.Y. May 1, 2018) ("[A]n ALJ's affirmative obligation to develop the record also includes the obligation to contact a claimant's treating physicians and obtain their opinions regarding the claimant's residual functional capacity."). These decisions are ultimately traceable to a Northern District of New York decision, Lawton v. Astrue, No. 08-cv-137, 2009 WL 2867905 (N.D.N.Y. Sept. 2, 2009). See, e.g., LoRusso v. Astrue, No. 08-cv-3467, 2010 WL 1292300, at *7 (E.D.N.Y. March 31, 2010) (citing Lawton, 2009 WL 2867905, at *4). But Lawton relied on 20 C.F.R. § 404.1512 for this broader duty, see Lawton, 2009 WL 2867905, at *16, and nothing in that regulation even mentions asking treating physicians to create and draft opinions.

5

such a holding "required further explanation," because plaintiff herself has offered virtually no explanation as to how those records would assist her.  Her motion is long on case citations but non-existent on application to this case.  Although plaintiff acknowledges that "it is not the province of the district court to weigh the evidence," she apparently would have me do just that, as she has not pointed to even one piece of the early period records, let alone analyzed them cumulatively, in support of her argument that she met the standard for the Appeals Council's review.

That standard requires "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there [to be] a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5).  The early period evidence is "new" because it was not part of the record before the ALJ, and it relates to a period before the hearing decision.  See, e.g., Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004).  But I would have to review it *de novo* because plaintiff has offered no argument, except a conclusory assertion, as to how the evidence is "material" or raises a "reasonable probability" that it would change the outcome of the decision.  The closest plaintiff gets to an argument is to state that the early period records "are not cumulative because they further illuminate [plaintiff's] respiratory condition in a way that no other records did," but there is no explanation of why that is the case.

I have nevertheless reviewed this early period evidence and, having done so, I do not see anything material and non-cumulative.  Plaintiff's counsel has cherry-picked particular portions of the early period evidence, but she has left out a substantial number of findings that would have supported the ALJ's conclusions.  For example, plaintiff

6

quotes a December 20, 2016 treatment note from her treating physician, Dr. Mikhail Kazachkov, which states that her medical history "is significant for repaired choanal atresia, severe tracheal stenosis, status post multiple surgical repairs, [and] status post decannulation." But the ALJ already knew that from records submitted at the hearing. Dr. Kazachkov further noted that plaintiff "has ongoing complaints of [shortness of breath], chest pain, [and] cough" along with "easy bruising and GI complaints." But plaintiff has left out that, on that same day, doctors observed no cough, shortness of breath, or coughing up blood, nor any "obvious history of choking." Plaintiff's ears, nose, and throat were normal. Although her voice was hoarse and raspy, she had normal nasal breathing. Nearly two months later, a CT scan showed no bronchiectasis or endobronchial obstruction, and there was no obstruction of plaintiff's central airways.

As to the later period evidence, the most plaintiff does is to note that, as a general rule, treatment records that post-date the hearing can still shed light on the plaintiff's condition before the hearing. That is true. See id. at 193–94. But plaintiff makes little argument why that matters in this case. She first asserts that the records show that her impairments are congenital, but this was already known to the ALJ based on plaintiff's surgeries as a child. And regardless of whether the impairments are congenital, developmental, or traumatic, plaintiff has not explained how that is material to the outcome here.

Plaintiff also argues that the later period records show an additional diagnosis of an "inner ear condition." In his decision, however, the ALJ noted that plaintiff had a tympanostomy tube at the right ear, i.e., a tube inserted in the eardrum to drain and aerate a clogged middle ear. Any later period records confirming an ear problem would not

7

have been material to the ALJ's determination that plaintiff could do less than the full range of light work.

Neither the early nor later period records created a reasonable probability that the ALJ would have reached a different conclusion. The Appeals Council did not err in so finding.

### III. The Treating Physician Rule

Plaintiff argues that the Appeals Council failed to give controlling weight to the opinion of one of her treating physicians, Dr. Scott Michael Rickert, a pediatric throat specialist. This point concerns one piece of the later period records. On August 7th, 2018, Dr. Rickert performed a laryngoscopy, *i.e.*, he inserted a device with a camera through plaintiff's nose to see the condition of her throat and vocal cords. His exam findings were almost entirely "normal":

| Nasopharynx | Nasopharynx: within normal limits, adenoids 10% |
|---|---|
| | FLEXIBLE ENDOSCOPY FINDINGS:<br>Base of Tongue     Normal without glossoptosis or enlargement<br>Epiglottis     Normal shape without retroflexion<br>Ar[y]epiglottic Folds     Normal without foreshortening<br>Pyriform Sinuses     Normal without pooling or asymmetry<br>Pharyngeal Walls     Normal<br>Vocal Cord Mobility     mildly restricted right movement<br>True Folds     Normal without presence of polyp or lesion<br>False Folds     Normal<br>Arytenoids     Normal with minimal erythema, no edema<br>Hypo[p]harynx     Clear without pooling; no lesions present<br>Cricopharyngeus     Normal<br><br>Strobe Findings (if performed):<br>Good mucosal wave, supraglottic squeeze<br><br>Comments: |

Plaintiff had a similar procedure with Dr. Rickert the next week that contained similarly unremarkable findings. However, on September 21, 2018, Dr. Rickert prepared a "To Whom It May Concern" letter, which consisted entirely of the following:

> Ms. Cori Ambrose is under my care for her complex diagnosis. Due to her medical condition, she is unable to work until further notice.
>
> If you should have any questions or concerns, please don't hesitate to call.

According to plaintiff, this is the opinion that the Appeals Council had to give controlling weight.

That argument fails for three reasons. First, it is well-established that it is the province of the Commissioner to determine whether the plaintiff can work, and opinions from treating physicians are not always entitled to controlling weight. See, e.g., Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (an ALJ did not err in declining to give controlling weight to a treating physician's opinion that "recited in a short sentence that [the plaintiff's] condition 'precludes her' from doing her former job"). Second, Dr. Rickert's opinion was entirely unsupported internally – that is, there was nothing in the letter to explain how he reached his conclusion. Perhaps even more importantly, the opinion contradicted all of his most recent treatment records, which gave no indication that plaintiff had a compromised residual functional capacity sufficient to render her disabled. Third, Dr. Rickert's treatment notes are so inconsistent with the "To Whom It May Concern" letter that even if he was right, plaintiff's condition would have to have materially changed between the time he performed procedures on her in August and the writing of the letter in late September. The question before the ALJ and the Appeals Council was plaintiff's condition at the time of the ALJ's decision, not any deterioration that may have occurred (if, in fact, her condition did deteriorate) by the end

9

of September.  Indeed, the Appeals Council specifically advised plaintiff that if her condition had deteriorated, she could file a new application for benefits based on her changed status.

The Appeals Council did not err in deciding that this conclusory opinion, alone or in conjunction with all the evidence, created a reasonable probability that the ALJ would have reached a different result.

Plaintiff's motion for judgment on the pleadings [14] is denied, and the Commissioner's cross-motion for judgment on the pleadings [17] is granted.  The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
January 28, 2021